UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                        :
In re ITT CORPORATION DERIVATIVE        :
LITIGATION                              : Case No. 07 Civ. 2878 (CLB)
                                        :
_____:


PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO ITT'S MOTION
FOR  RECONSIDERATION OR, IN THE ALTERNATIVE, CLARIFICATION
OF THE COURT'S MEMORANDUM AND ORDER DATED APRIL 10, 2008

## PRELIMINARY STATEMENT

Nominal defendant ITT Corporation ("ITT" or the "Company") has moved for reconsideration of the Court's April 10 opinion and order (the "Opinion") denying defendants' dismissal motions in this shareholder derivative action.  A motion for reconsideration is governed by a stringent standard that forbids simple relitigation of an issue once decided.    Rather, reconsideration is reserved for the exceptional instance where the district court has overlooked or misapprehended a controlling issue of law or fact.  As the Court of Appeals has instructed: "The standard for granting such a motion is strict. . . . [A] motion to reconsider should not be granted where the moving party seeks to relitigate an issue already decided." Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995).  Such relitigation is precisely what ITT seeks.

Citing no new authority, ITT seeks a second, and unwarranted, bite at the apple of demand futility.  In so doing, it falls far short of the Shrader test.  The Court concluded "that on the totality of facts as presently submitted, demand would be futile."  To denigrate the Opinion and demand reconsideration, ITT first revises and misstates the facts and then juxtaposes the relevant legal authority against revisionist history of the subject matter of this case.

In contending that the Court overlooked key factual matters, ITT's arguments torture the facts of record.  But for the

record demonstrating otherwise, ITT's misstatements about its (a)"voluntary" disclosures to the government in 2000, (b) hiring of outside counsel in connection with those disclosures, and (c) lack of high level involvement in illegal conduct and entry into State Department-approved compliance programs, might be of some avail.    However, while ITT alleges defendants corrected prior illegal conduct, the so-called remedial conduct consisted of nothing more than a blatant cover-up.    As John Schoenweiss, a senior agent of the Defense Department's Defense Criminal Investigative Service stated, in referring to ITT's serious violations, the "problem we encountered was in the culture – the willful self-blinding of company officials." Verified Consolidated Amended Complaint at ¶ 46.[1]

        The Complaint alleges with ample particularity that each director consciously disregarded his or her duty and that as a result, each faces a substantial likelihood of liability.    Through a more than decade-long course of conduct, ITT lied to the government, hired outside counsel that covered up those lies, and committed further illegal acts in an ongoing fraud, even after signing a consent decree with the State Department.

        These    allegations    amply    satisfy    demand    futility standards.    Because of the nature of the acts alleged in this matter, and the willful disregard of their duties by ITT Board

_____

[1]        Hereafter, "Compl. at ¶ __."

members, Indiana law (in accord with Delaware law), excuses plaintiff "from making a demand on the board." <u>Ritter v. Dollens (In re Guidant S'holders Deriv. Litig.)</u>, 841 N.E.2d 571, 575 (Ind. 2006). The flimsy effort to establish an "independent committee" and the appointment of directors who are not disinterested to serve on that committee, underscore the Board's lack of good faith.

Either "ITT'S directors utterly failed to implement any reporting or information system or controls" or, if implemented, they "consciously failed to monitor or oversee its operations," thereby disabling each and every one of them, director-by-director, from being informed of "risks or problems requiring their attention." <u>Stone v. Ritter</u>, 911 A.2d 362, 370 (Del. 2006). It is inconceivable that, at least for purposes of this pleading motion, ITT's directors were unaware that they were not discharging their fiduciary obligations. Thus, plaintiffs have alleged with particularity facts that "indicates that the potential for liability . . . may rise to a 'substantial likelihood.'" <u>Rales v. Blasband</u>, 634 A.2d 927, 936 (Del. 1993). As the Delaware Supreme Court was at pains to instruct, the "potential liability is based on the presumed truthfulness of the allegations of [the] amended complaint and the Third Circuit's conclusions thereon, <u>all of which must be accepted by this Court in the present procedural posture.</u>" <u>Id.</u> at n.13.    (Emphasis added.)

3

As in Rales, the allegations of illegality and misconduct in the Complaint raise a reasonable doubt as to the lack of "a valid exercise of business judgment." Id. at 936. A company culture is formulated by its board and here, each ITT director is alleged to have created or acquiesced in a culture of corporate "self-blinding." Accordingly, the Opinion correctly applies the Complaint's factual allegations to controlling law. ITT's motion to reconsider or, alternatively, for clarification, is both frivolous and wholly lacking in merit, and should be denied in its entirety.

## ARGUMENT

### A. The Court Properly Stated The Facts

Contrary to ITT's argument here, it conceded in the Plea Agreement filed in the District Court for the Western District of Virginia that it engaged, at fairly high levels, in more than a decade of willful unlawful conduct that jeopardized this country's security.

ITT admitted in the Plea Agreement, that it "agrees that it is pleading guilty . . . **because ITT is in fact guilty.**" Plea Agreement at 3. (Emphasis added.) ITT also admits in the Plea Agreement that it "agrees that the Statement of Facts attached to the Deferred Prosecution Agreement ² . . . is true and accurate to the best of its knowledge and belief. . . ." Id. That Statement

_____

[2]    Hereafter "DPA".

4

of Facts, as the Court is well aware from the briefing on defendants' dismissal motions, is replete with concessions of "[w]illlfulness at a fairly high level" and forms <u>part of the Plea Agreement</u>. And that <u>admitted</u> Statement of Facts gives the lie to ITT's other claims of the Court overlooking or misconstruing material facts.

First, ITT's argument that top management made a voluntary disclosure to the Government in 2000 (ITT Reconsideration Brief at 6)[3] is absurd. The Complaint alleges, based on the <u>admitted</u> Statement of Facts, that not only did ITT fail to make voluntary disclosure, it hired an outside law firm that helped conceal the truth, because ITT knew it had violated export restrictions for sensitive military equipment. ITT's management and the law firm then conspired to send a misleading letter concerning the problem to the State Department. As described in the Complaint, ITT and the law firm intentionally withheld from the State Department material facts and information to limit potential penalties and consequences. (Compl. ¶¶ 61-69.) This, ITT now claims, was "voluntary disclosure." It was not voluntary. It was not disclosure. It was deception.

The 2004 Consent Agreement was the next step in ITT's plot to mislead the Government. In reliance on the above-mentioned misleading letter, the government allowed ITT to enter into the

---

[3]    Hereafter "Br. at ___."

5

2004 civil Consent Agreement, in which ITT was not required to admit wrongdoing. It strains credulity to the breaking point that the directors were not aware of the Consent Agreement and its fraudulent underpinning because ITT is the leading manufacturer of night-vision equipment for the United States and the twelfth largest supplier of sophisticated defense systems to the U.S. military. Compl. ¶ 3.

Yet, even after hiring an outside law firm to cover-up its illegal conduct in 2000, and even after signing the Consent Agreement in 2004, as ITT acknowledged in the DPA, the Company continued to illegally export controlled equipment and information to China, Singapore, and Japan until April 2006. Statement of Facts at 32.

The "voluntary disclosure" in 2000, and the Consent Agreement in 2004, and the continued illegality through 2006 are a web of lies that ITT claims "demonstrates that the directors undertook reasonable, good faith oversight actions in response to the government investigations." Br. at 7. In fact the "disclosures" and agreement demonstrate just the opposite – a plot by a unanimous board acting in bad faith to hide and continue to perpetrate illegal conduct for another two years after the execution of the Consent Agreement. To claim that the Court overlooked factual matters that might have influenced its decision is to defend the indefensible – ten years of unlawful conduct by

6

ITT that admittedly reached senior management level and cannot have avoided condonation at board level.

## B.   The Special Litigation Committee Is Not Disinterested And Therefore Cannot Investigate ITT's Potential Class

The Court found that a demand was made on the Board "and the Officers and Directors have not sought recovery." ITT takes issue with this statement because of its creation of a Special Litigation Committee ("SLC"). Again, the Court views the facts correctly, while ITT seeks to re-write history.

As stated above, the Complaint details a prolonged, pervasive scheme to violate laws protecting our nation's security. Not only did ITT's directors consciously fail in their duty to monitor and oversee such activities, they also aggravated the harm to ITT by permitting management to stonewall the criminal investigation in an attempt to "essentially run out the clock on the statute of limitations." Statement of U.S. Attorney John Brownlee on the Guilty Plea of ITT Corporation, dated March 27, 2007 at 6. Such misconduct easily states a claim for bad faith fiduciary duty breach.

As members of this deficient board, each member of the SLC condoned the wrongdoing on their watch. Under Ind. Code Ann. § 23-1-32-4, these three directors cannot be considered "disinterested" unless the claims against them are frivolous or insubstantial, or they have been named as defendants solely to

7

prevent them from serving on a special committee. The claims against them are far from frivolous, but are well-grounded in fact and law. They are named as defendants because they were Board members at the time the wrongdoing occurred and abdicated their fiduciary responsibilities. They have not been named "for the sole purpose" of preventing them from serving on the SLC. Under Ind. Code Ann. § 23-1-32-4(d)(1), therefore they are not "disinterested." Because the members of the SLC are not disinterested, as alleged with particularity in the Complaint, the decision in Guidant S'holders, lends no support to ITT, because that decision requires establishment of a "disinterested committee." 841 N.E.2d at 575.

Accordingly, the SLC appointed by ITT is a nullity because it lacks any disinterested members. As the Court has correctly stated, "the Officers and Directors have not sought recovery."

## C. Controlling Law Demonstrates The Court Correctly Held Demand Was Futile

The Court properly concluded that "on the totality of the facts as presently submitted, demand would be futile." To contest that finding, ITT simply seeks, improperly, to "relitigate an issue already decided." Shrader, 70 F.3d at 257. ITT's argument remains unavailing because the Complaint, based on ITT's conceded Statement of Facts, establishes a "substantial likelihood" that defendants will be held liable for their fiduciary breaches. The Complaint

8

alleges that defendants, through their inaction, or willful blindness allowed serious violations of law to occur over more than a ten-year period that ultimately caused massive damage to the Company. The defendants were required to exercise good faith oversight over the Company regarding compliance with applicable law, rules and regulations. Guttman v. Huang, 823 A.2d 506 (Del. Ch. 2003). Regrettably, the directors failed to exercise that fiduciary duty.

Defendants' pervasive and sustained illegal conduct described above satisfies the Rales substantial likelihood standard on a director-by-director basis. In re Oxford Health Plans, 192 F.R.D. 111, 117 (S.D.N.Y. 2000) (when undetected scheme of significant magnitude and duration "demand futility is ordinarily found"); McCall v. Scott, 239 F.3d 808, 823 (6th Cir. 2001), amended on denial of reh'g McCall v. Scott, 250 F.3d 997 (6th Cir. 2001) (demand excused when board failed to act in face of systemic fraud for two years); In re Abbott Labs Deriv. S'holders Litig., 325 F.3d 795, 808 (7th Cir. 2003) (demand futility established where "continuing violations of federal regulations" occurred over a six-year period).

It was not until the government's investigation ended this rogue corporation's illegal conduct, conduct that placed our fighting troops in additional jeopardy, that corrective action was

9

finally begun.  As the Court held in <u>In re SFBC Int'l Inc. Sec. & Deriv. Litig.</u>, 495 F. Supp. 477, 486 (D.N.J. 2007) "the directors have exposed themselves to liabilities by allegedly ignoring particularly flagrant and reprehensible wrongdoing, <u>which unquestionably resulted in 'a potentially life threatening situation.</u>'" (Emphasis added; citation omitted.)[4]

Regardless of the number of ITT employees and the magnitude of sales generated by its night vision goggles division, the military business was a critical aspect of ITT's operations,[5] and violations (and their cover-up) of laws related thereto resulted in huge penalties, including a $100 million fine and penalty and "debarment" from future export licenses.  Compl. at ¶¶ 7 and 133.[6]

Notwithstanding abundant visible red flags, the directors permitted the Company to engage in illegal conduct for a decade. ITT

---

[4]    The decision in <u>Stone</u> is inapposite on this point because the <u>Stone</u> court was persuaded as to the quality of the corporation's internal control system.  In stark contrast, at ITT there was either no reporting system at all or the system failed to work.  Indeed, defendant Loranger has even admitted to "gaps" in ITT's compliance program. Complaint at ¶ 47.

[5]    Accordingly, ITT's reliance on <u>Ferre v. McGrath</u>, 2007 WL 1180650, at *9 (S.D.N.Y. Feb. 16, 2007), is misplaced because the violations of law were minuscule and, as the court noted, "had to be brought to light by outsiders!"  <u>Id.</u>  Alleged violations of law in <u>Ferre</u> concerned the improper certification of <u>only 17 students</u> as eligible for a tuition assistance program, and not illegal conduct of the massive scope and duration alleged in the case at bar.

[6]    The intent to obstruct a State Department investigation is cavalierly mischaracterized in ITT's brief as a <u>voluntary disclosure</u>, albeit admittedly "incomplete."  (Br. at 6.)

10

claims the Court failed to apply controlling precedent. But it would be difficult to imagine a clearer case for demand futility grounded on directors' conscious disregard for their responsibilities, because the facts alleged reveal that:

> (a) the directors utterly failed to implement any reporting or information system or controls; or having implemented such a system or controls, consciously failed to monitor or oversee its operations, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations.

Stone, 911 A.2d at 370 (Emphasis in original).

For all the foregoing reasons the Court neither overlooked nor misapprehended controlling decisions or factual matters. Its factual analysis, as filtered through the lens of controlling law, was correct and its conclusion unassailable.

## D.   The Opinion Needs No Clarification

ITT's alternative argument for clarification is nothing but a re-packaging of its ill-supported arguments for reconsideration. In the claimed guise of vagueness and over-broadness, they contend the Opinion could cause "substantial injustice." Suffice to say that the Court has adequately and properly defined the applicable legal standards. The emendations and deletions ITT seek are nothing more than a further effort to reverse the Court's findings.

11

## CONCLUSION

ITT's motion should be denied in its entirety.

Dated: May 8, 2008                      **HARWOOD FEFFER LLP**

By:  _[signature]_

Robert I. Harwood (RH-3286)
Samuel K. Rosen (SR-3287)
488 Madison Avenue
New York, New York 10022
Tel. (212) 935-7400

Chairman, Plaintiffs' Executive
Committee

**ABBEY SPANIER RODD**
        **& ABRAMS, LLP**
Judith Spanier
Orin Kurtz
212 East 39th Street
New York, New York 10016
Tel.: (212) 889-3700

**PASKOWITZ & ASSOCIATES**
Laurence D. Paskowitz(LP-7324)
60 East 42nd Street
New York, New York 10165
Tel.: (212) 685-0969

**WEISS & LURIE**
James E. Tullman (JT-9597)
David Katz (DK-6235)
551 Fifth Avenue
New York, New York 10176
Telephone: (212) 682-3025

Plaintiffs' Counsel

12